THE NEW JERSEY BUILDERS ASSOCIATION, A CORPORA-
TION OF THE STATE OF NEW JERSEY, *ET ALS.*, PLAIN-
TIFFS-RESPONDENTS, v. THE MAYOR AND TOWNSHIP
COUNCIL OF TOWNSHIP OF EAST BRUNSWICK, *ET
ALS*, DEFENDANTS-APPELLANTS.

Argued November 8, 1971—Decided March 6, 1972.

*Mr. Russell Fleming, Jr.,* argued the cause for appellants (*Messrs. Sailer and Fleming,* attorneys; *Mr. Fleming,* on the brief).

*Mr. Stewart M. Hutt* argued the cause for respondents (*Messrs. Hutt and Berkow,* attorneys; *Mr. Hutt,* of counsel and on the brief; *Mr. Richard W. Kracht,* on the brief).

The opinion of the Court was delivered by

MOUNTAIN, J. This action tests the validity of an ordinance of the Township of East Brunswick seeking to regulate building contractors. Immediately upon adoption of the ordinance, plaintiffs initiated this suit challenging the legislation in its entirety. The trial judge considered the matter upon certain stipulated facts, affidavits, briefs and oral argument; no testimony was taken. The court concluded that the ordinance was invalid. We granted the Township's motion for certification while appeal was pending in the Appellate Division. *R.* 2:12-2.

The ordinance takes the form of an amendment to the municipal building code. By way of preamble it recites that the failure of builders to comply with the code and other regulatory ordinances has resulted in conditions detrimental to public safety, health and general welfare and has caused great damage to purchasers of property. Reference is made to financially irresponsible builders who have failed or been unable to correct violations of the municipal regulations. In an effort to cope with this problem the ordinance directs that two things be done. First, before a building permit may issue, a builder must register with the Chief Building Inspector of the Township. The application for registration requires the disclosure of certain specified information as to the identity, qualifications and responsibility of the applicant. In the second place, with respect to each property offered for sale, the contractor must undertake to provide a one-year maintenance bond running in favor

of the purchaser in an amount equal to fifteen (15%) per cent of the sales price, "covering any defect which would be in violation of the Building Code of the Township of East Brunswick." Sanctions by way of suspension or revocation of registration are imposed, upon a showing of material misrepresentation or repeated or continued violations of the code, but only after notice and a hearing before the Township Council. The trial court struck down the ordinance essentially for the reason that its enactment was found to be without statutory basis.

We first consider the question as to whether building contractors may be regulated at all. The reasonable regulation of contractors and builders is defended by the appellants as a proper exercise of the police power. With this, as a general proposition, we agree. Although this particular occupation is not now regulated in New Jersey by any statute of general application, our Legislature has focused its attention upon other particular callings in the building trades and has enacted comprehensive laws to regulate and supervise electrical contractors (*N. J. S. A.* 45:5A–1, *et seq.,* "The Electrical Contractors Licensing Act of 1962"), master plumbers (*N. J. S. A.* 45:14C–1, *et seq.,* "The State Plumbing License Law of 1968") and home repair contractors (*N. J. S. A.* 17:16C–62, *et seq.,* "Home Repair Financing Act"). We know of no reason why, should the Legislature so wish, building contractors might not be brought under similar supervision. Statutes looking to this end have been widely adopted elsewhere and have been uniformly sustained. See, for example, *Northen v. Elledge,* 72 *Ariz.* 166, 232 *P.* 2d 111 (1951); *Arkansas State Licensing Board for General Contractors v. Lane,* 214 *Ark.* 312, 215 *S. W.* 2d 707 (1948); *Vogel v. Reed Supply Co.,* 277 *N. C.* 119, 177 *S. E.* 2d 273 (1970); *Enlow & Son, Inc. v. Higgerson,* 201 *Va.* 780, 113 *S. E.* 2d 855 (1960); *Dow v. United States, for use and Benefit of Halley,* 154 *F.* 2d 707 (10 Cir. 1946) (Utah). Such regulatory measures are designed for the protection of

the public against unscrupulous and unqualified persons purporting to have the capacity, knowledge and qualifications of a contractor. Elsewhere the business of a building contractor has been described as clothed with a public interest. *State ex rel. Reynolds v. St. Petersburg,* 133 *Fla.* 766, 183 *So.* 304, 118 *A. L. R.* 667 (1938). We readily conclude that the occupation of building contractor may, by an appropriate exercise of the police power, be made subject to reasonable regulation.

But it is argued that even if regulation is legally permissible at the state level, there has been no delegation of such power to municipalities. This was likewise the conclusion of the trial court. It is pointed out that *N. J. S. A.* 40:48-1(13), while authorizing the regulation and control of the construction of buildings and structures, says nothing about regulating builders themselves and that *N. J. S. A.* 40:52-1, which enumerates a long list of occupations and callings that may be licensed by a municipality, makes no mention of builders. These specific delegations of municipal authority, however, by no means comprise the entire legislative grant of police power. *N. J. S. A.* 40:48-2 reads as follows:

Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.

This statute has been construed as ". . . an express grant of broad general police powers to municipalities . . . subject only to the limitation that such action not be prohibited by or inconsistent with the Constitution or the other statutes." *Fred v. Mayor and Council, Old Tappan Borough,* 10 *N. J.* 515, 520-521 (1952). This broad delegation of police power

is ". . . in addition, rather than merely ancillary, to the sundry detailed authorizations for municipal action contained in our statutes." *Summer v. Teaneck Tp.*, 53 *N. J.* 548, 552 (1969). Furthermore the defendant township is governed by the Optional Municipal Charter Law (Faulkner Act), *N. J. S. A.* 40:69A-1, *et seq.* With respect to municipalities so governed, it has been ordained by the Legislature that,

The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other general law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to municipalities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed, as required by the Constitution of this State, in favor of the municipality. [*N. J. S. A.* 40:69A-30]

These broad grants of power clearly demonstrate that there has been adequate delegation of authority to sustain the local enactment, if it be not otherwise objectionable.

█ It is true that delegated police power is limited to matters of local concern and forms no basis for municipal intrusion into matters ". . . involving state policy or in the realm of affairs of general public interest and applicability." *Wagner v. Newark*, 24 *N. J.* 467, 478 (1957). There is, however, no basis here for invoking this limitation. We are dealing with a matter that may well be of local concern. The competence and responsibility of building contractors may differ widely throughout the state. Varying conditions, including, for example, the existence or lack of sufficient housing, may very well give rise to problems in some localities that find no counterpart in others. We think that the regulation and supervision of building contractors is a matter that may well call for different treatment in different parts of the State.

It remains to be determined whether the ordinance under review is a valid exercise of this power or whether, as the plaintiffs contend, it suffers from some fatal defect.

We see no objection to the requirement of registration as such.[1] Registration, as here employed, may be taken as synonymous with licensure. Local and county boards of health are specifically authorized to require a building contractor to register his name and address at the offices of the respective boards. *N. J. S. A.* 26:3–33(d); 26:11–10(d). Such registration establishes identity and seeks to insure a ready means of communication. Here, of course, the ordinance goes much further. If the registrant is a partnership, the names and addresses of all partners are required; if it is a corporation it must disclose the names and addresses of its officers, directors and principal stockholders. A description must be given of the type of work in which the applicant generally engages; if he has ever been convicted of violating a building code, the details of the offense must be forthcoming. He must give appropriate information as to his skill, experience and business and financial responsibility together with the names and addresses of two persons who can corroborate its accuracy. Here we find nothing fatally defective. The phrase, "principal stockholders," is perhaps unnecessarily vague; a reference to those stockholders owning at least a designated percentage of the stock would be more precise. We do not agree with plaintiffs that the use of the term "appropriate information" fixes too vague a standard. The legislative intent is clear and the formulation of questions seeking more precise data may sensibly be left to the informed and experienced judgment of the building inspector or other appropriate administrative official. *Motyka v. McCorkle*, 58 *N. J.* 165, 177–178 (1971); *New*

---

[1] A requirement of registration seeking to elicit very much the same information as is sought by this ordinance appears in each of the statutes mentioned above that have as their purpose the regulation of particular building trades. *N. J. S. A.* 45:5A–8, 10 (electrical contractors); 45:14C–10, 15 (master plumbers); *N. J. S. A.* 17:16C–78 (home repair contractors).

*Jersey Mortgage Finance Agency v. McCrane*, 56 *N. J.* 414, 426 (1970).

This brings us to the question as to the validity of that portion of the ordinance requiring maintenance bonds. It is specifically provided that the registrant shall supply

[a] statement that each job that the contractor performs on a single family dwelling will on transfer be covered by a one (1) year maintenance bond running in favor of the purchaser in the minimum amount of fifteen (15%) percent of the sale price covering any defect which would be in violation of the Building Code of the Township of East Brunswick.

The obvious purpose of the bond is to insure the continued existence of a readily available fund to indemnify the home owner for any damage that may come to light or be discovered during the one year period and which may be properly attributable to a violation of the building code.

The requirement of a bond or other security as a condition of municipal registration or licensure has been very generally upheld.

The filing of an indemnity bond or policy, or other establishment of financial security, frequently is made a prerequisite to the grant of a municipal license or permit. [9 *McQuillin, Municipal Corporations*, § 26.69, p. 171]

In *City of Portland v. Western Union Telegraph Co.*, 75 *Or.* 37, 146 *P.* 148 (1915) the court sustained an ordinance requiring anyone engaged in supplying messenger service to post a $1,000 bond conditioned upon the faithful delivery of goods or messages. It was provided that anyone aggrieved might sue on the bond. In *Sverkerson v. City of Minneapolis,* 204 *Minn.* 388, 283 *N. W.* 555 (1939) an ordinance was upheld that fixed as a prerequisite to the issuance of a license to transact the business of fuel dealer, the filing of a policy of liability insurance to be available to anyone suffering injury or damage from the applicant's pursuit of his occupation. Ordinances providing for the filing of surety bonds or

cash deposits to indemnify persons who become entitled to damages have been sustained as a condition of receiving municipal permission to operate an oil or gas well, *Gant v. Oklahoma City,* 289 *U. S.* 98, 53 *S. Ct.* 530, 77 *L. Ed.* 1058 (1933), or to engage in the excavation of earth products, *Farmington River Co. v. Town Plan and Zoning Com.,* 25 *Conn. Sup.* 125, 197 *A.* 2d 653 (1963).

Nor is such a requirement novel in New Jersey, where our own Legislature has resorted to this device. Thus *N. J. S. A.* 45:5A–19, a section of The Electrical Contractors Licensing Act of 1962, provides,

In addition to such other bonds as may otherwise be required, any person engaged in the business of electrical contracting under the provisions of this act shall not undertake to do any electrical work in the State of New Jersey or any political subdivision thereof unless and until he shall have entered into bond in favor of the State of New Jersey in the sum of $1,000.00, executed by a surety company authorized to transact business in the State of New Jersey, approved by the Department of Banking and Insurance, and to be conditioned on the faithful performance of the provisions of this act. The board shall, by rule and regulation, provide who shall be eligible to receive the financial protection afforded by said bond. The aforesaid bond shall be for the term of 24 months and must be renewed upon expiration for the ensuing 24 months.

It will be noted that the bond is to be conditioned upon the faithful performance of the provisions of the act. These include maintaining a satisfactory level of competent workmanship as well as refraining from fraudulent business activities and from acts of gross negligence. Any person may prefer charges under the act. *N. J. S. A.* 45:5A–16. Eligibility to receive financial benefits afforded by the bond has been defined by rule of the Board of Examiners of Electrical Contractors as follows:

An action may be maintained on the bond required by N. J. S. A. 45:5A–19 by any person injured, aggrieved or damaged through the failure of the obligor to perform the duties prescribed for electrical contractors under the provisions of N. J. S. A. 45:5A–1, et seq. or any rule of the board. [*N. J. A. C.* 13:31–5]

The State Plumbing License Law of 1968 contains an almost identical bond provision.[2] The further requirement appearing in this statute, that no municipality shall require any similar bond, at least suggests that the possibility of a like bond at the municipal level was within legislative contemplation.

■ We see no reason, as an abstract proposition, why a municipality, as well as the State, may not employ a bond requirement as an appropriate means of pursuing its effort, directed in the public interest, to regulate and supervise building contractors. But resort thereto must, in its impact, be reasonable and not oppressive. Furthermore the mechanics of the arrangement must be carefully spelled out and not left in doubt.

In *Moyant v. Paramus*, 30 *N. J.* 528 (1959) this court considered the validity of a municipal ordinance designed to regulate solicitors and canvassers, which provided for registration and for the filing of a $1,000 bond. The latter provision was held invalid both as an unreasonable exercise of the police power and as imposing an improper burden on interstate commerce. Here the Commerce Clause is not in-

---

2In addition to such other bonds as may be required pursuant to contract, no master plumber who is the holder of a license under the provisions of this act shall undertake to do any plumbing work in the State of New Jersey or any political subdivision thereof unless and until he shall have first entered into a bond in favor of the State of New Jersey in the sum of $3,000.00 executed by a surety company authorized to transact business in the State of New Jersey, approved by the Department of Banking and Insurance and to be conditioned on the faithful performance of the provisions of this act. No municipality shall require any similar bond from any master plumber licensed under this act. The board shall by rule and regulation provide who shall be eligible to receive the financial protection afforded by the bond required to be filed hereunder. The aforesaid bond shall be for the term of 12 months and shall be renewed at each expiration for a similar period. [*N. J. S. A.* 45 :14C–26]
We are told that no implementing regulation defining eligibility to receive benefits under the bond has as yet been adopted by the State Board of Plumbing Examiners.

volved. The bond provision in *Moyant* was deemed an improper exercise of the police power because the amount, $1,000, was uniformly exacted, and thus bore no relation to the amount of business done. Furthermore it was required of every single solicitor even where several were employed by the same company. 30 *N. J.* at 549. These defects do not appear to be present in the ordinance under review.

This matter originally came before the trial court on countermotions for summary judgment, both of which were denied. The affidavits submitted upon these motions were, however, before the court in reaching its decision and now constitute part of the record before us. There are a number of statements contained in these affidavits supporting a conclusion that bonds of the type required are unavailable, thus necessitating cash deposits in all cases. While we are not satisfied that this is necessarily so, there is nothing in the rather sparse record to the contrary. The plaintiffs contend that if they are required, as they insist will be the case, to hypothecate fifteen (15%) per cent of the sales price of each property to remain on deposit for a period of one year, the effect upon their cash flow and credit requirements will be such as virtually to put them out of business. Defendant does not address itself to this argument except for a concession in the stipulation of facts that "the type of bond required by the Ordinance is, at the present time, very difficult to obtain." In the view of the case taken by the trial judge it was unnecessary for him to explore this issue. But in the light of our disposition of the matter, this point becomes crucial. The regulation must be reasonable and not unduly oppressive. Were it not that we think the whole ordinance must be set aside, we would remand the case to the trial court for a resolution of this issue.

In its present form we find other objections to the bond provision, as well as to the ordinance as a whole. It is apparently assumed that a surety bond rather than the individual bond of the builder is what is intended, but the or-

dinance does not so state. Nor is the condition of the proposed bond spelled out with sufficient particularity. For instance, must an action on the bond be commenced within one year or may such a suit be brought thereafter to recover for a defect allegedly in existence during this period? Difficulties in procuring surety bonds of this sort will only be increased by a failure carefully to limit and define the intended risk. Furthermore it is not certain to whom the bond is to be delivered, nor precisely how it is to be released, nor the manner in which its benefits are to be made available.

Neither is it clear as to what or to whom the ordinance shall apply. One section states that "[a]ll work done under the provisions of this Code for which a permit is required is to be performed by a registered builder, his agents or employees." This would seem to indicate that it is applicable with respect to any work done for which a building permit is required, be it a housing development, a single new house, a small alteration or a commercial building, although the bond section refers only to single-family dwellings. Moreover, since there is no provision for an initial denial of registration for any reason, i e., no qualifications or standards for registration are prescribed, it must be assumed, as counsel for the Township conceded at oral argument, that registration could not be refused no matter how unfavorable the information supplied by the applicant might be. This renders at least dubious the validity of the authorization to suspend or revoke a registration for any materially false statement in the application, since in such a case registration could not have been refused even if the unfavorable truth had been told in the original application.

Of even greater importance is the obscurity of the undefined word "builder" — the term used to describe the person or entity subject to the ordinance. While it seems clear that the thrust of the legislation is directed toward the developer-sellers of new single-family homes, the ordinance mentions only builders, apparently referring to those who actually do

the work of construction. Such a one may not be the developer-seller at all, but rather an independent builder hired by the latter and having no direct contractual relationship with the ultimate purchaser sought to be secured against building code violations. If such be the case, is the purchaser to have a right of action on the bond that this independent builder has posted? Presumably this might be the case were the terms of the bond sufficiently broad to include any aggrieved person. But this crucial point should not be left to speculation. In addition it is to be noted that the bond requirement comes about only "upon transfer," *i. e.*, upon a sale of the building to the first purchaser after construction. Thus this provision seems not intended to be applicable in the case of a lot owner who contracts with a builder to erect a house for the owner's occupancy and not for sale. This may be a reasonable classification, but whether or not it is really the legislative intent is not clear.

These matters, as well as other instances of obscurity and lack of clarity in the ordinance which might be pointed out, should not be left in doubt or for judicial interpretation; the lawgivers' meaning should be made clear and exact. In its present form, and on the record before us, the ordinance must fall. We do not think it fair to builders that they be required to submit to regulations so vague and imprecise.

Only one case has been found that seems to be exactly in point. This is *Bon-Air Estates, Inc. v. Building Inspector of Town of Ramapo,* 31 *A. D.* 2d 502, 298 *N. Y. S.* 2d 763 (1969); noted in 45 *N. Y. U. L. Rev.* 183 (1970). Local legislation in the form of two interrelated ordinances of the Town of Ramapo imposed upon builders of one and two family homes the obligations, (1) to hold in escrow the down payment received upon signing of contract until transfer of title, and (2) to deposit cash or an undertaking in the amount of $1,000 upon application for a certificate of occupancy, to insure good workmanship and full compliance with applicable building codes and local regulations. The

security was to be available for one year. The requirement of a bond might not be waived by the purchaser. Upon the initiation of suit within the one year period, the building inspector, with whom the security was to be initially deposited, would transfer it to the clerk of the court in which suit had been started. The court struck down the ordinances upon various grounds, chief among which was its determination that there was no sufficient delegation of police power to justify the local legislation. Upon this point we have reached a different conclusion as to the law of this State, nor do we find the other arguments upon which the New York court relied sufficiently persuasive to alter the conclusions we have set forth above.

The judgment of the trial court is affirmed, but for the reasons hereinabove set forth.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For reversal*—None.