## PARA-MEDICAL AMBULANCE, INC. *v.* CITY OF TORRINGTON ET AL.

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE No. 29009
LITCHFIELD

Memorandum filed October 2, 1981

*Nicholas B. Eddy,* for the plaintiff.

*Gerald R. Reis,* corporation counsel, and *Joseph F. Keefe,* for the defendants.

PICKETT, J. The plaintiff Para-Medical Ambulance, Inc. is an ambulance service currently operating within the city of Torrington. Since it has been in business, the defendant police department of the city of Torrington has instituted an emergency ambulance service that has been certified by the state as primary responder for the region. The plaintiff pursuant to this certification has been designated a back-up. The plaintiff seeks to enjoin the defendants from operating the service, claiming that it is operating without authority since no ordinance has been passed by the city to allow such ambulance service in accordance with General Statutes § 7-148 (c) (5). In addition, damages are claimed as a result of the competition between the two services and the consequent loss of business to the plaintiff.

The plaintiff, Para-Medical Ambulance, Inc., has the burden of proof on the allegations of its complaint. It produced two witnesses. The first was Allan Rowe, its president and sole stockholder, who testified that ambulances and emergency medical service vehicles are regulated by federal and state agencies; that the state of Connecticut regulates his service and the city of Torrington's service; that he ran a commercial ambulance service and charged fees set by the state of Connecticut; that the city received donations for their services; and that his vehicles and the city's vehicles were similar in nature and both met the state and federal regulations. The second witness was Chris A. Gentille, director of the office of emergency medical services for the state of Connecticut. The plaintiff introduced two documents through him. They are the city of Torrington police department's certificates of authority to operate a noncommercial emergency medical service as an "R-2 Responder" from October 15, 1977, through July, 1978.

The defendants on cross-examination established that the office of emergency medical services was created by the legislature and that the city of Torrington is the primary emergency medical responder for the primary service area of the city of Torrington. Additionally, Para-Medical Ambulance, Inc., is, according to Mr. Rowe, the mutual aid back-up responder for said primary service area. Mr. Gentille testified that his agency approved the city of Torrington's designation as the primary responder. Mr. Rowe stated that a primary responder gets the 911 emergency calls and responds to them first.

In view of the fact that the defendants have not attacked the plaintiff's standing to bring the action, the court will assume, without deciding, that the matter is properly before it. " 'The "fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the

issues he wishes to have adjudicated." *Flast* v. *Cohen,* 392 U.S. 83, 99, 88 S. Ct. 1942, 20 L. Ed. 2d 947 [1968].' *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 485, 338 A.2d 497 [1973]. 'When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded.' *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 492, 400 A.2d 726 [1978]." *Berlin* v. *Santaguida,* 181 Conn. 421, 423, 435 A.2d 980 (1980). See also *Maloney* v. *Pac,* 183 Conn. 313, 320, 439 A.2d 349 (1981).

The issue before the court is whether the plaintiff has demonstrated irreparable harm so as to be entitled to injunctive relief. The standard in Connecticut for an injunction is irreparable harm and lack of an adequate remedy at law. *Stocker* v. *Waterbury,* 154 Conn. 446, 449, 226 A.2d 514 (1967). "Even where the danger of irreparable injury is shown, the granting of an injunction is not mandatory but within the sound discretion of the court." *Koepper* v. *Emanuelle,* 164 Conn. 175, 178, 319 A.2d 411 (1972). It is inequitable to grant an injunction which would cause damage to the defendant greatly disproportionate to the injury of which the plaintiff complains. *Moore* v. *Serafin,* 163 Conn. 1, 6–7, 301 A.2d 238 (1972).

The Home Rule Act, General Statutes § 7-194, expressly provides that cities having a charter shall have specific powers in addition to all powers granted to towns and cities under the constitution and General Statutes. Section 7-194 (44) authorizes a city "[t]o provide for health of the inhabitants of the town, city or borough and to do all things necessary or desirable to

secure and promote the public health . . . ." The operation of an emergency medical service is within the aforesaid power.

The plaintiff's reliance on General Statutes § 7-148 (c) (5) is misplaced in that the legislature specifically says in that statute that a city, in addition to such rights and powers it has under the provisions of the statutes, may make ordinances.[1]

This claim is rejected for three reasons. First, there are two statutes authorizing the city's activity. The Home Rule Act, § 7-194 (44), and the Emergency Medical Services Act, § 19-73u (k).[2] Second, the use of the word "may" in § 7-148 (c) makes it permissive or discretionary and not mandatory. The legislature did not use the word "shall," which it would have used had it meant the passage of an ordinance to be mandatory. See *Fisher* v. *Board of Zoning Appeals,* 143 Conn. 358, 122 A.2d 729 (1956); *Hartford* v. *Suffield,* 137 Conn. 341, 77 A.2d 760 (1951). Finally, the city is not operating a commercial ambulance service and no proof was offered by the plaintiff to that effect. Rather, the city is operating a non-commercial emergency medical service that is expressly authorized by the state of Connecticut and supervised by it.

The charter of the city of Torrington authorizes the operation of an emergency medical service. In particular, Title XI of that charter provides in § 11-6, entitled "DUTIES OF THE POLICE DEPARTMENT," that those duties include "the preservation of the public peace . . . regulation of traffic, protection of the rights of persons and property. . . ." Emergency medical services are incidental to the accomplishment

---

[1] General Statutes § 7-148 (c) (5) authorizes a city to make ordinances "[t]o provide for the furnishing by the municipality, or any person, firm or corporation, of ambulance service . . . ."

[2] General Statutes § 19-73u (k) provides: " 'Emergency medical service organization' means any organization whether public, private or voluntary which offers transportation or treatment services to patients under emergency conditions . . . ."

of the above. In *State ex rel. Sloane* v. *Reidy,* 152 Conn. 419, 209 A.2d 674 (1965), the Supreme Court held that a power can be claimed either under the Home Rule Act or a charter as the legislative intent was to broaden municipal powers. Title III of the Torrington charter provides the mayor with "those powers and duties conferred or imposed by the general statutes. . . ." The General Statutes give the office of emergency medical services the power to certify and license emergency medical services. The mayor of the city of Torrington has utilized that power since 1977. This has been recognized in *Professional Ambulance Service, Inc.* v. *Blackstone,* 35 Conn. Sup. 136, 138, 400 A.2d 1031 (1978), by Judge Covello who stated: "The actions claimed here to be unlawful are not directly those of Mayor Blackstone or of the council of the town of East Hartford but actually are the product of the implementation of a series of state regulations promulgated by the Connecticut department of health in furtherance of the emergency medical services program authorized by General Statutes §§ 19-73u et seq. Section 19-73ee authorizes the establishment of a series of regional emergency medical service councils."

The court finds that the certification of the Torrington police department to operate an emergency medical service pursuant to General Statutes § 19-73u through § 19-73pp is proper and legal. The authority to provide for safety, health and good order of society so that citizens are protected constitutes the "police power." *Farmington River Co.* v. *Town Plan & Zoning Commission,* 25 Conn. Sup. 125, 197 A.2d 653 (1963). A municipality has authority to take action which is necessary to enable them to discharge their duties. *Keegan* v. *Thompson,* 103 Conn. 418, 130 A. 707 (1925). Such power is not to be defined narrowly within the field of public health, safety, or morality. *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 40 A.2d 177 (1944).

General Statutes § 7-194 (44) of the Home Rule Act gives municipalities, in addition to charter and other statute powers, the power "[t]o provide for the health of the inhabitants of the town, city or borough and to do all things necessary or desirable to secure and promote the public health . . . ."

A police department must respond to emergency calls of varying nature. While some calls may be to enforce laws, others may be to aid persons that have had an accident. Emergency ambulance service is incidental and necessary to a police department's duties since without such a service the police department would be at a serious disadvantage in providing proper service to the citizens of Torrington in emergency or sudden illness situations where injury has occurred by reason of health, accident or crime.

The plaintiff has failed to demonstrate any legal right to an injunction and therefore judgment may enter for the defendants with costs.