764 A.2d 507 (2000)
LDM, INC., t/a The Ivy Inn; Lahiere's Restaurant Inc.; Annex Grill Inc., t/a The Annex Restaurant & Bar; and National Smokers Alliance, Plaintiffs,
v.
PRINCETON REGIONAL HEALTH COMMISSION, Defendant.
Superior Court of New Jersey, Law Division, Mercer County.
Decided August 29, 2000.
*510 Ross A. Lewin, Princeton, for plaintiffs (Jamieson, Moore, Peskin & Spicer, attorneys).
Michael J. Herbert, Princeton, and Karen L. Cayci, Trenton, for defendant (Herbert, Van Ness, Cayci & Goodell, attorneys).
R. Bruce Crelin for amicus curiae New Jersey Breathes (Kern, Augustine Conroy & Schoppmann, P.C., attorneys). *508
*509 FEINBERG, A.J.S.C.

PROCEDURAL HISTORY
On June 1, 2000, the Princeton Regional Health Commission ("PRHC") adopted Ordinance 2000-01 which prohibits smoking in all indoor public places in Princeton Township and Princeton Borough except homes, retail tobacco stores, and hotel or motel rooms or other lodging establishments with separate ventilation systems. On June 8, 2000, the plaintiffs, LDM, Inc., t/a The Ivy Inn ("Ivy Inn"), Lahiere's Restaurant Inc. ("Lahiere's"), Annex Grill Inc., t/a The Annex Restaurant & Bar ("Annex"), and National Smokers Alliance ("NSA") (collectively the "plaintiffs"), filed an order to show cause and verified complaint in lieu of prerogative writ against the defendant, PRHC, seeking a preliminary injunction enjoining PRHC from enforcing or taking any other action to enforce the smoking ban imposed by Ordinance 2000-01.
On June 8, 2000, following a telephonic conference call initiated by the court, PRHC voluntarily agreed to delay the enforcement of the Ordinance pending the return date of the order to show cause.[1] Consistent with the established briefing schedule, PRHC filed papers in opposition to the application for a preliminary injunction and, at the same time, filed a notice of motion to remove the NSA as a party to the action. As the result of a second telephonic conference, initiated by the *511 court on June 27, 2000, a second case management order was entered on July 5, 2000. The second case management order, in pertinent part, limited the issues on the return date of the order to show cause to adjudicate count one of the complaint (preemption) and the defendant's motion to remove NSA as a party plaintiff. With the consent of the parties, the court bifurcated the remaining counts of the verified complaint pending a resolution of count one of the complaint.[2]
On July 7, 2000, the court granted the application by New Jersey Breathes ("NJB") for leave to appear as amicus curiae. On July 20, 2000, the return date of the order to show cause, the court granted the application for injunctive relief pending a final determination on the merits[3].

BACKGROUND
The plaintiffs are three longstanding commercial eating and drinking establishments located in downtown Princeton and the NSA, a non-profit organization. According to certifications submitted by the three commercial establishments, each one has enacted its own smoking policy in accordance with State law. More specifically, the Ivy Inn is a commercial establishment licensed by the Division of Alcohol and Beverage Control ("Division") and is located at 248 Nassau Street in Princeton, New Jersey. The Ivy Inn has been doing business in Princeton since 1966 and currently permits smoking in accordance with applicable State statutes. Lahiere's is a commercial establishment licensed by the Division. Lahiere's has been doing business in Princeton since 1919 and currently permits smoking in accordance with applicable State statutes. The Annex is a commercial establishment licensed by the Division. The Annex has been doing business in Princeton for nearly fifty years and currently permits smoking in accordance with applicable State statutes.
NSA, a non-profit membership organization comprised of over three million adult members nationwide, including New Jersey, supports the accommodation of smokers and nonsmokers in public places and workplaces. NSA opposes government imposed smoking bans and discrimination against smokers, and advocates the rights of business owners to determine their own smoking policies.
PRHC is a regional health commission established in accordance with N.J.S.A. 26:3-83 et seq. and was established by the municipal boards of health of Princeton Township and Princeton Borough.[4]
NJB is a coalition, convened by the Medical Society of New Jersey, that focuses on three primary goals: (1) to eliminate smoking in public places; (2) to prohibit the tobacco industry's access to youth; and (3) to dramatically reduce use of tobacco by pregnant woman and minority populations.[5] *512 NJB represents that it has substantial and significant knowledge which bears directly upon the central issues in this case.
On June 1, 2000, PRHC adopted an ordinance which bans smoking in virtually every indoor public area except homes, retail tobacco stores and rooms in hotels, motels or other lodging establishments with separate ventilation systems. The enumerated purposes of the Ordinance are that:
[ (1) ] ... [T]obacco is a major contributor to indoor air pollution and breathing secondhand smoke is a cause of disease to nonsmokers; and
[ (2) ] health hazards of breathing second-hand smoke include lung cancer, heart disease, respiratory infection and decreased respiratory function; and
[ (3) ] active smoking of tobacco and the passive inhalation of environmental tobacco smoke are the most prevalent causes of preventable death, disease and disability; and
[ (4) ] the U.S. Surgeon General found that separating smokers from non-smokers within the same air space does not eliminate the exposure of nonsmokers to environmental tobacco smoke; and
[ (5) ] the State of New Jersey has acknowledged that smoking is the leading cause of death from fire; and
[ (6) ] the State of New Jersey has entered into litigation against various tobacco product manufacturers and others for the purpose of improving the public's health and adopting policies and programs to achieve a significant reduction in smoking by its citizens and, in particular, by youth; and
[ (7) ] as a part of its settlement the State of New Jersey will receive significant funding for the advancement of the public's health, including the implementation of important tobacco-related public health measures and restrictions; and
[ (8) ] the Legislature has deemed the control of smoking to be a necessary and proper exercise of municipal authority pursuant to N.J.S.A. 40:48-1 et seq. and 40:48-2 et seq. and N.J.S.A. 2C:33-13 for the preservation of the public health, safety, and welfare of the community; and
[ (9) ] on the basis of scientific reports, other authoritative data and published warnings of the U.S. Surgeon General, the [PRHC] finds that the public interest and public trust to safeguard the welfare of the citizens of Princeton require that certain measures be established to eliminate exposure to the risk of harm due to the use of lighted tobacco products and due to environmental tobacco smoke in order to: 1) protect the public health and welfare from dangerous, unnecessary or involuntarily health risks by prohibiting smoking in public places and workplaces; and 2) guarantee that the need to breathe smoke-free air shall take priority over the desire to smoke and create health hazards for smokers and nonsmokers alike ....
Based on these nine enumerated rationales, the PRHC "prohibit[s] at all times within Princeton Borough and Township" smoking in all enclosed public places with the exception of hotels, motels or other lodging establishments and retail tobacco stores. The PRHC defines prohibited smoking as "inhaling, exhaling, burning or carrying any lighted cigarette, cigar, pipe and other such devices that contain tobacco and/or other smoke producing products." Additionally, the Ordinance provides that:
Smoking may occur at a reasonable distance outside an enclosed area where smoking is prohibited. A reasonable distance shall be any distance from which tobacco smoke does not enter the air people breath through entrances, exits, *513 windows, ventilation systems or any other means.
In their verified complaint, the plaintiffs challenge the Ordinance on these grounds:
(1) Under State law, PRHC is not authorized to establish mandates regulating smoking in indoor public places; and
(2) The Ordinance establishes mandates in direct violation of State law and is illegal and unenforceable; and
(3) The Ordinance is preempted by State law; and
(4) The PRHC lacks statutory authority to enact the Ordinance; and
(5) The Ordinance was enacted in violation of the Local Government Ethics Law, N.J.S.A. 40A:9-22.1 et seq. ("LGEL"); and
(6) PRHC is barred by R.P.C. 1.8 from accepting monies from New Jersey Breathes or any other third party to fund the defense of any litigation instituted against PRHC arising out of the passage of the Ordinance.

I.

WHETHER NSA IS A PROPER PARTY PLAINTIFF
Standing is a threshold determination which governs the ability of a party to initiate and maintain suit before the court. In re Adoption of Baby T., 160 N.J. 332, 734 A.2d 304 (1999). Generally, in New Jersey, "[e]ntitlement to sue requires a sufficient stake and real adverseness with respect to the subject matter of the litigation." New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 67, 411 A.2d 168 (1980) (quoting Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107, 275 A.2d 433 (1971)). Additionally, "[a] substantial likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision is needed for purposes of standing." Ibid. (quoting Home Builders League of S. Jersey, Inc. v. Berlin Township, 81 N.J. 127, 134-35, 405 A.2d 381 (1979)).
Similarly, an association may have standing to maintain suit on its own behalf, based on either associational or representational standing. In re Ass'n of Trial Lawyers of Am., N.J., & Chapter 197 of the Laws of 1987, 228 N.J.Super. 180, 186, 549 A.2d 446 (App.Div.), certif. denied, 113 N.J. 660, 552 A.2d 180 (1988). In Ass'n of Trial Lawyers, the court explained that "[f]irst, an association `may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'" Ibid. (quoting Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343, 362 (1975)). Under this principle, an association may assert the rights of its members insofar as the alleged infractions affect the "`members' associational ties.'" Ibid. Second, if an association has not itself suffered injury, then the "`association may have standing solely as the representative of its members.'" Ibid.
The NSA has not alleged that it has "associational" standing; the NSA is not seeking judicial relief in its own right from injury to itself or to vindicate whatever rights and immunities the association itself may enjoy. Instead, the NSA maintains that it has standing in a "representational" capacity. That is, the NSA submits that it has standing to challenge Ordinance 2000-01 solely as the representative of its members.
For standing to exist based upon a "representational" basis, the "association must allege that its members, or any one of them, `are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.'" Ibid. Here, the NSA submits that its members who live in or around the Princetons stand to suffer injury if the Ordinance goes into effect. The NSA represents that it has obtained letters from at least twenty members of its organization who live in or around Princeton *514 Township or Borough in support the NSA's involvement in this lawsuit and in opposition to the Ordinance. Assuming this is true, there can be no doubt that the NSA stands in a representational capacity.
The question then, is whether those twenty NSA members would have standing if they initiated this lawsuit in an individual capacity. Based on the following, the court finds that they would have standing to participate in the present lawsuit and consequently, the NSA has standing in its representational capacity of those members. The NSA has demonstrated a sufficient stake in the action and a real adverseness. Again, there are at least twenty NSA members who live in or around Princeton Township or Borough that oppose enforcement of the Ordinance. A common goal of the NSA is to protect the ability of its members to smoke in public. Because the challenged Ordinance prohibits smoking in virtually all enclosed public places, the NSA and its local members certainly have a "stake" in the outcome of the lawsuit.
Additionally, the challenge by NSA to the Ordinance evinces real adverseness. If plaintiffs do not prevail in this action, the Ordinance will go into effect and smoking will be banned in virtually all enclosed, public places in Princeton Township and Borough. The local NSA members will be "harmed" because they will be legally precluded from smoking in nearly all enclosed public places.
The PRHC contests standing by NSA on the grounds that smoking is not a "right" but "merely an amorphous concept without any concrete legal basis."[6] The standing requirement, however, does not mandate that a legal challenge must allege the infringement of a constitutionally protectable "right". Instead, the courts only require a real adverseness and a substantial likelihood that the parties will suffer harm in the event of an unfavorable decision. Regardless of whether or not smoking is a constitutionally protected "right", enforcement of the Ordinance is adverse to the interests of NSA members who seek to smoke in enclosed, public places.
Based on this, the court finds that the NSA has standing in a representational capacity to participate in this action as a party plaintiff. Accordingly, the court denies the application by PRHC to remove the NSA.

II.

WHETHER OR NOT ORDINANCE 2000-01 IS PREEMPTED BY STATE STATUTE
The power to adopt ordinances for the public health, safety and welfare of the municipality and its inhabitants is coterminous with the police power of the Legislature. N.J.S.A. 40:48-1, entitled General and Regulatory Powers and N.J.S.A. 40:48-2, entitled Other Necessary and Proper Ordinances, authorize the governing municipal body to make, amend, repeal and enforce certain ordinances as necessary and proper and delegate broad powers to municipalities to adopt ordinances reasonably related to public health, safety and welfare. See State v. Crawley, 90 N.J. 241, 247, 447 A.2d 565 (1982). Thus, municipalities may enact regulatory ordinances on any subject matter of local concern which are reasonably related to a legitimate object of public health, safety or welfare, New Jersey Builders Ass'n v. Mayor & Township Council of East Brunswick, 60 N.J. 222, 227, 287 A.2d 725 (1972), provided that the State has not preempted the field, Overlook Terrace Management Corp. v. Rent Control Board of West New York, 71 N.J. 451, 460, 366 A.2d 321 (1976).
A municipality may not contradict a policy the Legislature establishes. Auto-Rite Supply Co. v. Mayor & Township Committeemen of Woodbridge, 25 N.J. 188, 194, 135 A.2d 515 (1957); Plaza *515 Joint Venture v. City of Atlantic City, 174 N.J.Super. 231, 416 A.2d 71 (App.Div. 1980). Hence, an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Township of Chester v. Department of Envtl. Protection, 181 N.J.Super. 445, 450, 438 A.2d 334 (App.Div.1981).
"When the Legislature has preempted a field by comprehensive regulation, a municipal ordinance attempting to regulate the same field is void if the municipal ordinance adversely affects the legislative scheme." Plaza Joint Venture, supra, 174 N.J.Super. at 238, 416 A.2d 71 (citing Fair Lawn Educ. Ass'n v. Fair Lawn Bd. of Educ., 79 N.J. 574, 586, 401 A.2d 681 (1979); Summer v. Township of Teaneck, 53 N.J. 548, 554, 251 A.2d 761 (1969)). Justice Schreiber, in Overlook Terrace Management Corp., supra, stated that the pertinent questions for consideration in determining the applicability of preemption are:
1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)?
2. Was the state law intended, expressly or impliedly to be exclusive in the field?
3. Does the subject matter reflect a need for uniformity?
4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? ...
5. Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature?
[Overlook Terrace Mgmt. Corp., supra, 71 N.J. at 461-62, 366 A.2d 321 (citations omitted).]
In Plaza Joint Venture, supra, the Appellate Division noted:
A legislative intent to preempt a field will be found either where the state scheme is so pervasive or comprehensive that it effectively precludes the coexistence of municipal regulation or where the local regulation conflicts with the state statute or stands as an obstacle to state policy expressed in enactments of the Legislature.
[174 N.J.Super. at 238, 416 A.2d 71 (quoting Garden State Farms, Inc. v. Bay, 77 N.J. 439, 450, 390 A.2d 1177 (1978) (emphasis in original)).]
Preemption is a judicially created doctrine which supports the principle that a municipality cannot act contrary to the State. Summer, supra, 53 N.J. at 554, 251 A.2d 761.
In the case at bar, the preemption analysis requires a methodical review of the five criteria set forth above for the type of facility, establishment or activity attempted to be regulated or controlled by the municipality. Initially, a court must carefully examine in detail the actual ways in which state and municipal ordinances conflict. Overlook Terrace Mgmt. Corp., supra, 71 N.J. at 461, 366 A.2d 321. "The question is, in every practical sense, as much one of fact as one of law. `As a general proposition an intent to preempt the power of municipalities will not be lightly inferred ..., but in the final analysis the answer must depend on the particular setting, the values involved, and the impact of local legislation upon those values.'" Mannie's Cigarette Serv., Inc. & C.I.C. Corp. v. Town of W. New York, 259 N.J.Super. 343, 348, 613 A.2d 494 (App. Div.1992) (quoting State v. Ulesky, 54 N.J. 26, 29, 252 A.2d 720 (1969)).
The applicability of preemption begins with an analysis of Title 26, Chapter 3D, entitled Smoking in Public Places and Title 26, Chapter 3E, entitled Restaurants. In enacting each of these statutes, the Legislature set forth its legislative findings and declarations as follows:
The Legislature finds and declares that the resolution of the conflict between the *516 right of the smoker to smoke and the right of the nonsmoker to breathe clean air involves a determination of when and where, rather than whether, a smoker may legally smoke. It is not the public policy of this State to deny anyone the right to smoke.

[N.J.S.A. 26:3D-1 (passenger elevators); N.J.S.A. 26:3D-7 (health care facilities and doctor's offices); N.J.S.A. 26:3D-15 (educational institutions); N.J.S.A. 26:3D-23 (places of employment); N.J.S.A. 26:3D-32 (food and marketing stores); N.J.S.A. 26:3D-38 (indoor public places); N.J.S.A. 26:3D-46 (government buildings); and N.J.S.A. 26:3E-7 (smoking in restaurants) (emphasis added).]
Despite the exactness of the language set forth in the first nine lines of the legislative findings and declaration for each particular section of the statute, the last sentence of the legislative findings for each section varies. See N.J.S.A. 26:3D-1 ("purpose ... is to prohibit smoking in passenger elevators in every building other than a single family dwelling[ ]"); N.J.S.A. 26:3D-7 ("purpose ... is to control smoking in health care facilities, except in designated areas, and in the waiting rooms of offices of persons licensed to practice the healing arts[ ]"); N.J.S.A. 26:3D-15 ("purpose ... is to control smoking on the premises of schools, colleges, universities and professional training schools, except in designated areas[ ]"); N.J.S.A. 26:3D-23 ("purpose ... is to control smoking in places of employment, except in designated areas[]"); N.J.S.A. 26:3D-32 ("purpose ... is to prohibit smoking in enclosed retail food and marketing stores[]"); N.J.S.A. 26:3D-38 ("purpose ... is to control smoking in certain indoor public places[ ]"); N.J.S.A. 26:3D-46 ("purpose ... is to protect the interest of nonsmokers in government buildings and allow smokers the right to smoke in designated areas in government buildings[ ]"); N.J.S.A. 26:3E-7 ("Legislature finds that it is in the interest of the public health to encourage restaurants to establish nonsmoking areas[ ]").
Consistent with the standards articulated in Overlook Terrace Management Corp., supra, the court must evaluate the State statute in detail and determine whether preemption applies. Despite the laborious nature of this process, it cannot be ignored. Therefore, the discussion that follows will identify, review and analyze the separate and distinct sections enumerated in N.J.S.A. 26:3D-1 et seq. and N.J.S.A. 26:3E-1 et seq. to determine whether any or all of these sections preempt Ordinance 2000-01.

A.

Restaurants
Ordinance 2000-01 provides that "smoking shall be prohibited at all times in Princeton Borough and Princeton Township in all restaurants, bars, cabarets and taverns."[7]N.J.S.A. 26:3E-1 defines a restaurant as "any facility or part thereof in which food is prepared and provided or served for consumption on the premises...." The Committee Statement provides:
The purpose of Assembly Bill No. 547, as amended by the Senate Law, Public Safety and Defense Committee, is to *517 encourage restaurants to establish nonsmoking sections.
* * * * * *
The committee also amended the bill to remove from section 1, which contains the Legislature's policy statement, a sentence stating that the Legislature finds that the right of a nonsmoker to breathe clean air should supersede the right of the smoker to smoke.
By amendment, the committee also removed from section 1 a statement that the purpose of the bill is to control smoking in certain restaurants and replaced it with a statement that the Legislature finds it to be in the interest of the public health to encourage restaurants to establish nonsmoking areas.
N.J.S.A. 26:3E-7, entitled Legislative findings, provides that the Legislature finds that "it is in the interest of the public health to encourage restaurants to establish nonsmoking areas." See also N.J.S.A. 26:3E-8 ("`[b]ar' means an establishment or portion of a restaurant, including any contiguous lounge or common area in which the principal business is the sale of alcoholic beverages for consumption on the premises of such establishment or in such portion of a restaurant[ ]"); and N.J.S.A. 26:3E-9 ("[t]he provisions of this act shall apply to all restaurants but shall not apply to any bar[ ]").
As noted above, N.J.S.A. 26:3E-9 specifically excludes bars:
a. The provisions of this act shall apply to all restaurants but shall not apply to any bar.... A restaurant which does not provide a nonsmoking section shall in the same manner post a sign stating that "This restaurant does not offer a nonsmoking area, as permitted by law."
...
b. The size and location of the nonsmoking area shall be determined by the owner or manager or person in charge in accordance with patron needs.
The language of the statute is clear and unambiguous. The statute allocates to the restaurant owner, manager or person in charge, the authority to determine whether or not a nonsmoking section will be provided. Furthermore, the decision in reference to the size and location of the nonsmoking area, if one is designated, is left to the sole discretion of the owner, manager or person in charge. N.J.S.A. 26:3E-9(b).
In an effort to dispel the notion that nonsmoking sections were mandatory, the Legislature enacted N.J.S.A. 26:3E-10(a):
The State or any agency or political subdivision thereof may suggest guidelines for establishing nonsmoking areas in restaurants which may be adopted by the owner, manager or person in charge but in no case shall they be mandatory.
The intent of the Legislature to vest the authority of whether or not to designate a nonsmoking section solely with the restaurant owner, manager or person is further bolstered by the language set forth in section (b) of the statute. N.J.S.A. 26:3E-10(b), provides that
The provisions of this act shall supersede any other statute, municipal ordinance, and rule or regulation adopted pursuant to law concerning smoking in restaurants except where smoking is prohibited by municipal ordinance under authority of R.S. 40:48-1 and 40:48-2 or by any other statute or regulation adopted pursuant to law for purposes of protecting life and property from fire.
The statutory language set forth above provides the necessary foundation to evaluate whether or not Ordinance 2000-01 is preempted by State statute. Inherent in that analysis, is a review of the five factors set forth in Overlook Terrace Management Corp., supra. In the case at bar, the court finds:
(1) That the Ordinance adopted by PRHC expressly conflicts with State law by forbidding that which is specifically authorized by State statute; and
(2) That Chapter 3E reflects and expresses a clear and unequivocal intent to *518 exclusively govern and regulate smoking; and
(3) That requirement of uniform statewide treatment on this subject matter is reflected in the Legislative findings and declaration of policy set forth in Title 26 and the regulations are so comprehensive that little, if anything, is left to municipal control; and
(4) That the State scheme is so pervasive and comprehensive that it precludes coexistence of municipal regulation; and
(5) That the Ordinance represents an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature.
The statute, therefore, precludes a municipality from banning smoking in restaurants based on the alleged deleterious effects of smoking on the public health. The authority of the municipality to restrict smoking in restaurants is limited to protecting life and property from fire. Plaintiffs submit that "PRHC has simply attempted to concoct a fire safety rationale to aid in the legal defense of its smoking ban and that the mere invocation of the term fire safety does not transform a broad-ranging smoking ban based on public health concerns into a fire safety ordinance designed and implemented in all its particulars based on fire safety concerns."[8]
Later in this opinion, the court will address whether or not the smoking ban for restaurants is authorized under the authority of N.J.S.A. 40:48-1 and 40:48-2 or any other statute or regulation adopted pursuant to law for purposes of protecting life and property from fire.

B.

Bars and Taverns
Ordinance 2000-01, in pertinent part, provides that smoking shall be prohibited at all times in all restaurants, bars, cabarets and taverns. N.J.S.A. 26:3E-1 defines a restaurant as "any facility or part thereof in which food is prepared and provided or served for consumption on the premises but shall not include mobile food establishments or any temporary food establishment which operates at a fixed location for a limited period of time in connection with a fair, carnival, public exhibition or similar transitory gathering or charitable fund-raising event." Interestingly, N.J.S.A. 26:3E-9 provides that "[t]he provisions of this act shall apply to all restaurants but shall not apply to any bar." (Emphasis added). A bar is defined as "an establishment or portion of a restaurant, including any contiguous lounge or common area in which the principal business is the sale of alcoholic beverages for consumption on the premises of such establishment or in such portion of a restaurant." N.J.S.A. 26:3E-8.
Two possible interpretations emerge from the determination by the Legislature to exclude bars. First, it may be argued that the exclusion of bars vests the municipality with the authority to regulate this area. Second, it may be argued that by excluding bars, the Legislature specifically intended not to regulate smoking in bars. Based on the extensive statutory scheme and the narrow purpose clause, "[t]herefore, the Legislature finds that it is in the interest of the public health to encourage restaurants to establish nonsmoking areas," set forth in N.J.S.A. 26:3E-7, the second interpretation is the more reasonable one.
The court rejects the argument by PRHC that, by expressly excluding bars from N.J.S.A. 26:3E-1 et seq., Ordinance 2000-01 does not conflict with the statute and therefore the doctrine of preemption does not apply. Whether or not the ordinance adopted by a municipality expressly conflicts with State law by forbidding that which is specifically authorized by State statute is not the only factor *519 to be considered by the court. Rather, all five factors must be carefully evaluated. This position is consistent with Plaza Joint Venture, supra, wherein the Appellate Division noted:
A legislative intent to preempt a field will be found either where the state scheme is so pervasive or comprehensive that it effectively precludes the coexistence of municipal regulation or where the local regulation conflicts with the state statute or stands as an obstacle to state policy expressed in enactments of the Legislature.
[174 N.J.Super. at 238, 416 A.2d 71 (quoting Garden State Farms, Inc., supra, 77 N.J. at 450, 390 A.2d 1177).]
Most importantly, in the case at bar, the remaining four factors apply:
(1) Chapter 3E reflects and expresses a clear and unequivocal intent to exclusively govern and regulate smoking in bars, taverns and cabarets; and
(2) The requirement of uniform statewide treatment on this subject matter is reflected in the Legislative findings and declaration of policy set forth in Title 26 and the regulations are so comprehensive that little, if anything, is left to municipal control;
(3) The State scheme is so pervasive and comprehensive that it precludes coexistence of municipal regulation; and
(4) The Ordinance represents an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature.
The illogical result inherent in the statutory interpretation proposed by PRHC is amply illustrated by the statutory provisions exempting bars from regulation. The statute makes clear that bars can be part of a restaurant or a stand alone establishment. See N.J.S.A. 26:3E-8(a). In regulating restaurants, the State Legislature made clear that its purpose was to encourage restaurants to establish nonsmoking sections, not to prohibit smoking in restaurants. Implementing this purpose, the statute contains an express exemption for bars. See N.J.S.A. 26:3E-9(a). The legislative history reflects that the bill was purposefully amended "to exclude bars from the bill's requirements."[9] Thus, when exempting bars from regulation, the Legislature intentionally freed them from regulation and had no intention of permitting any other public body like the PRHC to overrule that decision and to ban smoking in bars. It would be illogical to permit municipal smoking bans in bars; the exact type of establishment the Legislature determined should be entirely free from regulation.
Additionally, the interpretation advanced by PRHC proposes that restaurants with bars be treated differently from stand alone bars. As noted herein, N.J.S.A. 26:3E-10 precludes a municipality from imposing a smoking ban in restaurants. Therefore, municipal authorities lack the authority to regulate any portion of a restaurant, including its bar area. However, under the premise offered by the PRHC, no similar preemption would apply to stand alone bars. This statutory interpretation thus creates the illogical situation where the Legislature would protect restaurant bars from any municipal regulation, but expose stand alone bars to any and all municipal requirements, including a smoking ban. Obviously, the Legislature did not intend such a result.
In sum, the interpretation by PRHC ignores general principles of statutory construction. Where the State Legislature has expressly declared its intent to balance the interests of smokers and nonsmokers and, in so doing, chose specified areas in which to impose regulations, but exempted others, the only reasonable conclusion is that the Legislature chose not to impose or permit any regulation in those areas.[10] Based on the above, Ordinance 2000-01 is preempted by State statute.

*520 C.

Places of Employment or Workplaces
Ordinance 2000-01 provides that smoking shall be prohibited at all times within Princeton Borough and Princeton Township in all workplaces as defined by section 2(I). That section provides:
[A]ny enclosed area under the control of a public or private employee which employees use during the course of employment, including, but not limited to, work areas, employee lounges and restrooms, conference and classrooms, and hallways. A private residence is not a place of employment unless it is used as a childcare, adult day care or health care facility.
In determining whether or not the Ordinance is preempted, one must examine efforts by the Legislature to regulate smoking in the workplace. N.J.S.A. 26:3D-24(b) defines place of employment as "a structurally enclosed location or portion thereof which is not usually frequented by the public at which 50 or more individuals perform any type of service or labor for consideration of payment under any type of employment relationship with or for a private corporation, partnership or individual." The statute further requires that the
[E]mployer [ ] establish written rules governing smoking in that portion within a building for which the employer is responsible ... which policy shall include designated nonsmoking areas but may include designated smoking areas, unless otherwise prohibited by municipal ordinance under the authority of R.S. 40:48-1 and R.S. 40:48-2 or other statute or regulation adopted pursuant to law for purposes of protecting life and property from fire.

[N.J.S.A. 26:3D-25.]
The statute mandates that an employer designate nonsmoking areas in locations, not usually frequented by the public, at which 50 or more individuals perform employment related services and permits an employer to designate smoking areas, unless required by statute to protect life and property from fire. Therefore, unless a municipality can demonstrate a legitimate fire safety reason, an employer who is required to provide nonsmoking areas at the same time may include designated smoking areas.
The plaintiffs submit that the Ordinance is preempted by State statute. Once again, an evaluation begins with a review of the Overlook Terrace Management Corp. standards. In the case at bar, the court finds:
(1) That the Ordinance adopted by PRHC expressly conflicts with State law *521 by forbidding that which is specifically authorized by State statute; and
(2) That N.J.S.A. 26:3D-23 to -32 reflects and expresses a clear and unequivocal intent to exclusively govern and regulate smoking; and
(3) That requirement of uniform statewide treatment on this subject matter is reflected in the Legislative findings and declaration of policy set forth in Title 26 and the regulations are so comprehensive that little, if anything, is left to municipal control; and
(4) That the State scheme is so pervasive and comprehensive that it precludes coexistence of municipal regulation; and
(5) That the Ordinance represents an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature.
Once again, the intent by the Legislature to exclusively govern the subject matter is reflected in N.J.S.A. 26:3D-26(a) and (b):
[ ]The State or any agency or political subdivision thereof may suggest guidelines for rules governing smoking in places of employment which may be adopted by employers, but in no case shall they be mandatory.
[ ]The provisions of this act shall supersede any other statute, municipal ordinance, and rule or regulation adopted pursuant to law concerning smoking in places of employment except where smoking is prohibited by municipal ordinance under authority of R.S. 40:48-1 and R.S. 40:48-2 or by other statute or regulation adopted pursuant to law for purposes of protecting life and property from fire.
The statute, therefore, precludes a municipality from banning smoking in a location or portion thereof which 50 or more individuals perform an employment related service except for the purpose of protecting life and property from fire. Later in this opinion, the court will address whether or not the PRHC has demonstrated that a smoking ban for a location or portion thereof which is usually frequented by the public at which 50 or more individuals perform an employment related service is authorized under the authority of R.S. 40:48-1 and 40:48-2 or any other statute or regulation adopted pursuant to law for purposes of protecting life and property from fire.

D.

Workplace in a Location in Which Less Than 50 Individuals Perform an Employment Related Service
N.J.S.A. 26:3D-24(b) defines place of employment, in part, as a "structurally enclosed location or portion thereof which is not usually frequented by the public at which 50 or more individuals perform any type of service ...." Not surprisingly, PRHC asserts that Ordinance 2000-01 does not offend the doctrine of preemption since the statute does not include places of employment consisting of less than 50 or more employees. The court does not agree.[11]
The position advanced by PRHC, while at first blush may appear reasonable, is inconsistent with the clear and unequivocal intent of the legislature to exclusively govern the issue of smoking. N.J.S.A. 26:3D-25, entitled Employer rules governing smoking, in pertinent part, provides that "[e]very employer shall establish written *522 rules governing smoking in that portion within a building for which the employer is responsible[ ] ... which policy shall include designated nonsmoking areas but may include designated smoking areas." The Legislature, by including locations in which 50 or more individuals perform any type of employment service, intended to exclude smaller places of business from providing nonsmoking areas for its employees. Implicit in this exclusion, is the determination by the Legislature to allocate to private employers the decision as to whether or not smoking should be permitted on the premises and under what circumstances. And, the Legislature reaffirmed its intent by adopting N.J.S.A. 26:3D-26(b), which provides that "[t]he provisions of this act shall supersede any other statute, municipal ordinance, and rule or regulation adopted pursuant to law concerning smoking in places of employment...."
The position asserted by PRHC, in its supplemental brief, that the municipality is free to regulate places of employment that employ less than 50 employees, is without merit. The legislative decision to exclude certain areas from smoking regulation under its comprehensive statutory scheme in no way reflects an intent to leave such regulation to municipal authorities. Indeed, this statutory scheme is so comprehensive and detailed that the Legislature's clear intent to exempt these areas reflects a deliberate choice to keep these areas free from any regulation.
In interpreting a statute, a court's overriding goal is to determine the Legislature's intent in enacting the statute. Roig v. Kelsey, 135 N.J. 500, 515, 641 A.2d 248 (1994) (citing Lesniak v. Budzash, 133 N.J. 1, 626 A.2d 1073 (1993)). "Sources of legislative intent are the language of a statute, the policy behind a statute, concepts of reasonableness, and legislative history." Toll Bros., Inc. v. West Windsor Township, 312 N.J.Super. 540, 547, 712 A.2d 266 (App.Div.), certif. denied, 157 N.J. 543, 724 A.2d 803 (1998) (citations omitted). A court must consider the legislative policy underlying a statute. Lesniak, supra, 133 N.J. at 10, 626 A.2d 1073. Official legislative history and legislative statements can also serve as valuable interpretive aids in determining the Legislature's intent. State v. McQuaid, 147 N.J. 464, 480, 688 A.2d 584 (1997) (citations omitted). Moreover, where, as here, the court must discern the Legislature's intent in enacting one or more of a series of statutes, the court must consider the entire legislative scheme of which each statute is a part. Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 234, 708 A.2d 401 (1998)(citing Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129, 527 A.2d 1368 (1987)).
In the present case, the pertinent statutes make clear that the State Legislature enacted a comprehensive statutory scheme governing the regulation of smoking in indoor public places in an effort to strike a balance between the rights of smokers and nonsmokers. The language in the statutes makes it clear that the Legislature intended that areas exempt from regulation should be free from regulation. The preamble of each statute, repeatedly emphasizes that the purpose of the statutes is to balance the rights of smokers and nonsmokers and that "[i]t is not the public policy of this State to deny anyone the right to smoke." N.J.S.A. 26:3D-1; N.J.S.A. 26:3D-7; N.J.S.A. 26:3D-15; N.J.S.A. 26:3D-23; N.J.S.A. 26:3D-32; N.J.S.A. 26:3D-38; N.J.S.A. 26:3D-46; N.J.S.A. 26:3E-7. By carefully determining when, where, and under what circumstances smoking would be allowed, the Legislature attempted to achieve the intended balance by making it abundantly clear that State agencies and political subdivisions could not take actions that would alter that balance. Indeed, by directing that such authorities may only suggest guidelines but not mandates, and that these State laws shall supersede any other ordinance, rule or regulation, with limited exceptions, the Legislature declared that it *523 would regulate smoking and that it would choose where and how such regulation would occur.
The position advanced by PRHC that it can ban smoking in those areas expressly exempt from State regulation is inconsistent with the Legislative intent. By striking a balance, the Legislature mediated between the competing interests raised in a variety of different business establishments and consciously articulated different outcomes in different circumstances ranging from a smoking ban in certain establishments to exemption of other establishments from regulation altogether.

E.

Indoor Public Places
Ordinance 2000-01 provides that smoking shall be prohibited at all times in Princeton Borough and Princeton Township in all enclosed public places as defined by sections 2(e) and 2(g). See Section 1(a). Section 2(e) and 2(g) must be read together:
2(e) Enclosed Area shall mean all space, extending from the floor to the ceiling, which is enclosed on all sides by solid walls or windows (exclusive of doors or passage ways), including all space therein screened by partitions or dividers which do not extend to the ceiling or are not solid, office-type structures.
2(g) Public Place shall mean any enclosed area to which the public is invited or in which the public is permitted, except a private residence and a "workplace" as defined herein.
Similar to the foregoing sections, the preemption analysis begins with a review of N.J.S.A. 26:3D-38 et seq. More particularly, N.J.S.A. 26:3D-39(a) defines an indoor public place as:
[A] structurally enclosed area generally accessible to the public in theaters, gymnasiums, libraries, museums, concert halls, auditoriums, or other similar facilities which are neither owned or leased by a governmental entity or qualify as a health care facility or the waiting room of a person licensed to practice the healing arts. Race tracks facilities, casinos licensed under the "Casino Control Act," P.L.1977, c. 110 (C. 5:12-1 et seq.), facilities used for the holding of boxing and wrestling exhibitions or performances, football, baseball, and other sporting events facilities, bowling alleys, dance halls, ice and roller skating rinks and other establishments providing ambulatory recreation are excluded from this definition.
The aforementioned provision must be read in conjunction with N.J.S.A. 26:3D-40. This section provides:
a. The owner, manager, proprietor, or other person who has control of an indoor public place shall establish nonsmoking areas in those places for which he is responsible. In establishing nonsmoking areas, the owner, manager, proprietor, or other person in charge shall provide areas for nonsmokers to use to conduct business or participate in activities free from the annoyance and health hazard of smoke.
b. Smoking is prohibited in pharmacies, drug stores, or areas registered with the board of pharmacy of the State of New Jersey and to which permits have been issued for the dispensing of prescription drugs, and in any areas where hearing aids are sold at retail.
c. Smoking areas for employees may be permitted in any indoor public place covered under this act as long as they are separate areas and not generally accessible to the public except where smoking is prohibited by municipal ordinance under the authority of R.S. 40:48-1 and R.S. 40:48-2 for the purposes of protecting life and property from fire.
Importantly, N.J.S.A. 26:3D-41(a) provides that the municipality "may suggest guidelines for establishing nonsmoking areas in indoor public places which may be followed by the owner, manager, proprietor or other person in charge of an indoor *524 public place but in no case shall the guidelines be mandatory." In the case at bar, the court finds:
(1) That the Ordinance adopted by PRHC expressly conflicts with State law by forbidding that which is specifically authorized by State statute; and
(2) That N.J.S.A. 26:3D-38 to -45 reflects and expresses a clear and unequivocal intent to exclusively govern and regulate smoking; and
(3) That requirement of uniform statewide treatment on this subject matter is reflected in the Legislative findings and declaration of policy set forth in Title 26 and the regulations are so comprehensive that little, if anything, is left to municipal control; and
(4) That the State scheme is so pervasive and comprehensive that it precludes coexistence of municipal regulation; and
(5) That the Ordinance represents an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature.
As noted heretofore, the express, clear and unequivocal intent to exclusively govern and regulate smoking by the Legislature is evinced by the enactment of N.J.S.A. 26:3D-41(b):
The provisions of this act shall supersede any other statute, municipal ordinance, and rule or regulation adopted pursuant to law concerning smoking in indoor public places except where smoking is prohibited by municipal ordinance under authority of R.S. 40:48-1 and R.S. 40:48-2 or by any other statute or regulation adopted pursuant to law for purposes of protecting life and property from fire.
N.J.S.A. 26:3D-40(c) provides that "[s]moking areas for employees may be permitted in any indoor public place covered under this act as long as they are separate areas and generally not accessible to the public except where smoking is prohibited by municipal ordinance ... for the purposes of protecting life and property from fire." Accordingly, smoking by employees is permitted so long as the employer provides a separate area and the designated section is not accessible to the public. Therefore, the municipality lacks the authority to regulate this area but for a legitimate and demonstrable showing that the smoking ban is necessary for purposes of protecting life and liberty from fire. As noted heretofore, the court will address the fire safety issues later in this opinion.[12]
The Legislature specifically excluded race track facilities, casino licensed facilities under the Casino Control Act and a host of other sporting event facilities, bowling alleys and other establishments providing ambulatory recreation. One interpretation is that the exclusion of these types of facilities and establishments supports the determination that they are not preempted by State statute, thereby vesting in the municipality the authority to control and to regulate smoking. The more logical conclusion is that the Legislature intended to exclude these facilities, establishments and activities from any and all smoking regulations, including the requirement that they establish nonsmoking areas.

F.

All Restrooms, Lobbies, Reception Areas, Hallways, Elevators, Service Lines and any Other Common-Use Areas in Enclosed Public and Workplaces
Ordinance 2000-01 provides that "smoking shall be prohibited at all times within Princeton Borough and Princeton *525 Township in all restrooms, lobbies, reception areas, hallways, elevators, service lines and any other common-use areas in enclosed public and workplaces." Once again, this court finds that the Ordinance is preempted by State statute for all of the reasons set forth in the previous section.

G.

Other Statutory Provisions
In this opinion, the court has referred to the broad and comprehensive scope of Chapter 3D (smoking in public places) and Chapter 3E (smoking in restaurants). Although not enumerated in detail herein, Chapter 3D includes: (1) N.J.S.A. 26:3D-7, Health Care Facilities and Doctor's Offices; (2) N.J.S.A. 26:3D-17, Educational Institutions; (3) N.J.S.A. 26:3D-32, Food and Marketing Stores; and (4) N.J.S.A. 26:3D-46, Government Buildings. For each of the types of facilities, offices, buildings, institutions and stores set forth therein, the Legislature has included the following:
[ ]The State or any agency or political subdivision thereof may suggest guidelines for establishing nonsmoking areas... which may be adopted ... but in no case shall they be mandatory.
[ ]The provisions of this act shall supersede any other statute, municipal ordinance, and rule or regulation adopted pursuant to law concerning smoking in restaurants except where smoking is prohibited by municipal ordinance under authority of R.S. 40:48-1 and R.S. 40:48-2 or by any other statute or regulation adopted pursuant to law for purposes of protecting life and property from fire.
[N.J.S.A. 26:3D-10(a) & (b) (health care facilities and doctors's offices); N.J.S.A. 26:3D-19(a) & (b) (educational institutions); N.J.S.A. 26:3D-32(a) & (b) (food and marketing stores); and N.J.S.A. 26:3D-46(a) & (b) (government buildings).]
These categories, coupled with those discussed in detail in this opinion,[13] evidence the clear and unequivocal intent by the Legislature to exclusively govern smoking.[14]

H.

Summary
PRHC and NJB rely on C.I.C. Corp. v. Township of East Brunswick, 266 N.J.Super. 1, 628 A.2d 753 (App.Div.), aff'd, 135 N.J. 121, 638 A.2d 812 (1994), a case that allowed municipal bans of cigarette vending machines, in support of their argument that Ordinance 2000-01 is not preempted. Based on the following, however, the court finds that their reliance on C.I.C. is misplaced.
In C.I.C., the Township of East Brunswick, concerned for the health of its minor residents affected by early smoking, enacted an ordinance in July, 1990 banning such machines. The plaintiffs, owners and operators of cigarette vending machines, challenged the legality of the ordinance on the ground of preemption and equal protection. The trial judge concluded that the *526 ordinance was preempted by the Cigarette Tax Act, N.J.S.A. 54:40A-1 to -45, and the Unfair Cigarette Sales Act, N.J.S.A. 56:7-18 to -38. The Appellate Division reversed.
Importantly, in C.I.C., the Appellate Division recognized that both the Cigarette Tax Act and the Unfair Cigarette Sales Act were enacted to raise revenues and control the abuses arising from non-licensed sale of cigarettes, such as smuggling. Id. at 9, 628 A.2d 753 (quoting Coast Cigarettes Sales, Inc. v. Mayor & City Council of Long Branch, 121 N.J.Super. 439, 447, 297 A.2d 599 (Law Div. 1972)). By contrast, the court held that the purpose of the Township ordinance was to prevent the sale of cigarettes to minors. Since the Township ordinance focused on purchasers of cigarettes, while the State laws sought to regulate sellers of cigarettes, the court found that the purpose of the laws were quite different. Accordingly, the court concluded that East Brunswick's ordinance was not preempted because there was no clear legislative intent to establish the exclusive regulation of cigarette vending machines nor any existing State law with which the municipal ordinance conflicted. Id. at 12, 628 A.2d 753.
In the case at bar, the statutory scheme compels an opposite conclusion. As noted heretofore, there is a clear intent by the State Legislature to comprehensively regulate smoking in indoor public places, and to do so exclusively. The State Legislature promulgated requirements designed to regulate when, where, and under what circumstances smoking is allowed. Their varying requirements seek to balance the rights of smokers and nonsmokers, a balance that would be thwarted by municipal smoking bans like that under challenge.
NJB cites Oregon Restaurant Ass'n v. City of Corvallis, 166 Or.App. 506, 999 P. 2d 518 (2000), in support of its position that preemption does not apply. In Corvallis, the municipality adopted an ordinance prohibiting smoking in all enclosed public spaces within the City or located on City owned property including, but not limited to, various listed locations, including restaurants. In Corvallis, the plaintiffs asserted that it was preempted by the Oregon Indoor Clean Air Act and that the ordinance was void because it was unconstitutionally vague. The court held, relying on the ancillary authority set forth by statute, that the statute did not preempt the ordinance.[15]
Reliance by NJB on the finding reached by the court is misplaced. Importantly, in Corvallis, the court found that the Oregon statute specifically permitted further regulation because the statute did not prohibit smoking in other locations, but it provided that the regulations that it authorized "`are in addition to and not in lieu of any other law regulating smoking.'" Id. at 519, 999 P.2d 518. The court rejected plaintiffs' facial vagueness challenge to the ordinance.
To summarize this court's analysis, in determining the applicability of preemption, the following factors must be considered: whether the ordinance conflicts with state law, either because of conflicting policies or operational effect; whether the state law was intended, expressly or impliedly, to be exclusive in the field; whether the subject matter reflects a need for uniformity; whether the state scheme is so pervasive or comprehensive that it precludes the coexistence of municipal regulation; and whether the ordinance stands as an obstacle to the accomplishment of the full purposes and objectives of the legislature. Overlook Terrace Mgmt. Corp., supra, *527 71 N.J. at 461-62, 366 A.2d 321. Based on the court's in depth analysis of the State statutory scheme regarding smoking regulations, the court finds that (1) the Ordinance conflicts with State law; (2) the State law is intended, expressly or impliedly, to be exclusive in the field; (3) the subject matter reflects a need for uniformity; (4) the State scheme is so pervasive and comprehensive that it precludes coexistence of municipal regulation; and (5) the Ordinance adopted by the PRHC stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature. Accordingly, the Ordinance is preempted by State law.

III.

WHETHER THE ORDINANCE IS SUSTAINABLE BASED ON FIRE SAFETY ISSUES
Ordinance 2000-01, on its face, primarily addresses the impacts of smoking on the public health of the community that are unrelated to fire safety issues. The Ordinance is preceded by seven separate "whereas" clauses highlighting the effects of tobacco smoke. The first four relate to the health hazards of breathing second-hand smoke. The first page of the ordinance is set forth below:
Whereas, numerous studies have found that tobacco is a major contributor to indoor air pollution and that breathing second-hand smoke is a cause of disease, including lung cancer, in nonsmokers; and
Whereas, the health hazards of breathing second-hand smoke include lung cancer, heart disease, respiratory infection and decreased respiratory function; and
Whereas, the active smoking of tobacco and the passive inhalation of environmental tobacco smoke are the most prevalent causes of preventable death, disease and disability; and
Whereas, the U.S. Surgeon General found that separating smokers from non-smokers within the same air space does not eliminate the exposure of nonsmokers to environmental tobacco smoke; and
Whereas, the State of New Jersey has acknowledged that smoking is the leading cause of death from fire; and
Whereas, the State of New Jersey has entered into litigation against various tobacco product manufacturers and others for the purpose of improving the public's health and adopting policies and programs to achieve a significant reduction in smoking by its citizens and, in particular, by youth; and
Whereas, as part of its settlement the State of New Jersey will receive significant funding for the advancement of the public's health, including the implementation of important tobacco-related public health measures and restrictions; and
Additionally, the last "whereas" clause provides:
[O]n the basis of scientific reports, other authoritative data and the published warnings of the U.S. Surgeon General, the PRHC finds that the public interest and public trust to safeguard the welfare of the citizens of Princeton require that certain measures be established to eliminate exposure to the risk of harm due to the use of lighted tobacco products and due to environmental tobacco smoke in order to: (1) protect the public health and welfare from dangerous, unnecessary or involuntary health risks by prohibiting smoking in public places and workplaces; and (2) guarantee that the need to breathe smoke-free air shall take priority over the desire to smoke and create health hazards for smokers and nonsmokers alike.
The court agrees with the plaintiffs in their assertion that, based on the Legislative history[16] and the language of the Ordinance, it does not appear that the *528 Ordinance was adopted for the purposes of protecting life and property from fire. Section 1 of the Ordinance prohibits smoking in virtually all buildings without reference to such fire safety issues as the existence of sprinkler systems, other fire suppression systems, the ease of entry and exit, the special characteristics of users of the facility or the like. Section 4 of the Ordinance also prohibits smoking at a reasonable distance outside each building to ensure that "tobacco smoke does not enter the air people breathe through entrances, exits, windows, ventilation systems or any other means" and does not focus on fire issues, but a concern for inhaling smoke. Section 5(a) exempts hotels, motels and other lodging establishments from the smoking ban if rooms "have separate ventilation systems", not if the rooms have a working fire suppression system. Similarly, Section 5(b) of the Ordinance exempts retail tobacco stores, an exemption not based on fire-related rationale.
Perhaps most interesting is that the Ordinance exempts residential dwellings.[17] If the PRHC was truly focused on fire safety, it would not have prohibited smoking in the types of establishments actually regulated by the Ordinance, but would have regulated residential buildings exempt from Ordinance 2000-01. Viewed as a whole, the Ordinance cannot be credibly defended as a fire safety measure. On its face, the Ordinance is a near absolute smoking ban that is not guided by fire safety concerns, but is designed to address the deleterious effects of tobacco smoke.
The court finds that the mere invocation of the term "fire safety" does not transform *529 a broad-ranging smoking ban based on public health concerns into a fire safety ordinance designed and implemented in all its particulars based on fire safety concerns. As the legislative history makes perfectly clear, the PRHC is a health commission that was motivated by its concern over public exposure to tobacco smoke. The PRHC cannot disguise its true purpose and intent and claim that the Ordinance is a fire safety measure simply by adding a single "whereas" clause on fire dangers and then adopting, without change, the Ordinance's operative provisions designed to address exposure to tobacco smoke.
Based on the above, the court specifically finds that Ordinance 2000-01 cannot be sustained based on fire safety reasons.

IV.

DID PRHC HAVE THE AUTHORITY TO ADOPT ORDINANCE 2000-01 BASED ON FIRE SAFETY REASONS
N.J.S.A. 26:3-84 permits the "[b]oards of health of 2 or more municipalities to form an association to furnish such boards with public health services." N.J.S.A. 26:3-92, entitled "Powers, duties and jurisdiction of regional health commission," provides the following:
Each regional health commission shall have jurisdiction in matters of public health within the geographic area of the participating municipalities. It shall succeed to all powers and perform all the duties conferred and imposed upon the municipal boards of health ....
As noted above, the authority of the regional health commission is derived from the powers and duties allocated to municipal boards of health. The general powers and duties of a local board of health are set forth in N.J.S.A. 26:3-31. The introductory paragraph provides "[t]he local board of health shall have the power to pass, alter or amend ordinances and make rules and regulations in regard to the public health within its jurisdiction...." Thereafter, the statute lists sixteen separate and distinct paragraphs outlining with specificity the general powers and duties of the local board of health. Interestingly, none of the enumerated powers identify fire safety or are in any way related to fire safety.
In its supplemental brief, PRHC argues that local boards of health possess general powers to enact ordinances and to make rules and regulations in the interest of public health and that the enumeration of the specific powers and duties set forth in N.J.S.A. 26:3-31, has been found not to be a limitation upon the general powers of a board of health with regard to matters pertaining to public health. Zullo v. Board of Health of Woodbridge Township, 9 N.J. 431, 88 A.2d 625 (1952). Relying on Board of Health of Weehawken Township v. New York Central Railroad Co., 4 N.J. 293, 300, 72 A.2d 511 (1950), PRHC asserts that its authority to adopt a fire safety ordinance is based on the commissioners' public health interest in protecting the community from the threat of fire. This reliance is misplaced.
The State smoking statutes provide a narrow exception for municipal regulation of smoking for fire safety reasons. The statutes provide, in pertinent part, that:
The provisions of this act shall supersede any other statute, municipal ordinance, and rule or regulation adopted pursuant to law concerning smoking [ ] except where smoking is prohibited by municipal ordinance under authority of R.S. 40:48-1 and 40:48-2 or by any other statute or regulation adopted pursuant to law for purposes of protecting life and property from fire.

[N.J.S.A. 26:3D-10(b) (health care facilities); N.J.S.A. 26:3D-19(b) (educational institutions); N.J.S.A. 26:3D-26(b) (places of employment); N.J.S.A. 26:3D-41(b) (indoor public places); N.J.S.A. 26:3D-49 (government *530 buildings); N.J.S.A. 26:3E-10(b) (restaurants) (emphasis added).]
The statutory citation to N.J.S.A. 40:48-1 and -2 is no accident and refers to the power of municipalitiesnot local boards of health or regional health commissions to enact fire safety laws. N.J.S.A. 40:48-1 defines the general and regulatory powers of a municipality and states that "[t]he governing body of every municipality" may pass ordinances in 31 enumerated areas, several of which encompass fire safety issues. See N.J.S.A. 40:48-1(14) and (24). Similarly, N.J.S.A. 40:48-2 provides that:
Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.

[Emphasis added.]
The foregoing statutes, which are expressly referenced in the fire safety exception, build upon other fire safety statutes delegating fire safety powers to municipal governments. The Uniform Fire Safety Act, N.J.S.A. 52:27D-192 et seq., recognizes the right of each "municipality to adopt an ordinance dealing with fire safety...." N.J.S.A. 52:27D-202(b). The Uniform Fire Safety Act also provides that "[e]ach municipality in this State is authorized to adopt an ordinance providing for local enforcement of this act" and may designate either the municipal fire department, county fire marshall or a fire district as the local enforcing agency. N.J.S.A. 52:27D-202(a). Likewise, N.J.S.A. 40:48-2.28 permits "the governing body of any municipality ... [to] provide for the regulation and control of ... matters related to fire prevention." (Emphasis added). Taken together, these statutes make it abundantly clear that the municipal authority to pass fire safety ordinances resides in the municipal governing body, rather than a regional health commission such as the PRHC.
Regional health commissions have no more authority than the local boards of health that they supersede. N.J.S.A. 26:3-92. Those powers are limited to public health issues and do not extend to fire safety. N.J.S.A. 26:3-31 enumerates the specific powers and duties of local boards of health. It provides: "[t]he local board of health shall have power to pass, alter or amend ordinances and make rules and regulations in regard to the public health within its jurisdiction, for the following purposes ...." Id. (emphasis added). Chapter 3 then lists sixteen purposes, all of which focus on health and sanitation including protecting the public water supply, regulating the sanitary conditions of various establishments, compelling sewer connections, and regulating the accumulation of offal and any decaying or vegetable substance. Id. Fire safety is not mentioned once among these enumerated powers.
Although the powers of local boards of health are not strictly limited to those enumerated in N.J.S.A. 26:3-31, "[a]n exercise of delegated power in a manner not within the contemplation of the Legislature must be restrained within the proper bounds and be held void." Hasbrouck Heights Hosp. Ass'n v. Borough of Hasbrouck Heights, 15 N.J. 447, 455, 105 A.2d 521 (1954) (citations omitted). This is clearly the case here. Local boards of health were created "to prevent nuisances in conservation of the public health[ ]", and "to prevent disease and discomfort, such as might arise from contamination of air, water or food." Garrett v. State, 49 N.J.L. 94, 101-02, 7 A. 29 (Sup. Ct.1886). They were not created to prevent fires. The remaining ninety-three sections of Title 26 confirm the limited and focused role of local boards of health. Importantly, *531 not one of those sections mentions fire safety. For example, N.J.S.A. 26:3-64 authorizes local boards of health to "enact and amend health ordinances" (emphasis added). N.J.S.A. 26:3-33 empowers local boards of health to "[s]ecure the sanitary conditions of every building ...", including the authority to regulate plumbing, ventilation and drainage thereof. Numerous provisions of Title 26 direct local boards of health to prohibit and regulate nuisances. See N.J.S.A. 26:3-45; N.J.S.A . 26:3-46; N.J.S.A. 26:3-47; N.J.S.A. 26:3-56. In the same vein, local boards of health must annually advise the municipal governing body of "the appropriation which it believes necessary for health purposes." N.J.S.A. 26:3-41 (emphasis added).
Finally, the agreement forming the PRHC supports these limits on its authority. There is no mention of fire safety in the agreement. Under Section 4, entitled "General powers, duties and jurisdiction," the PRHC's authority is limited to "matters of public health." (Spano Cert. at Ex. D (emphasis added)). Under Section 5, entitled "Services to be performed," the agreement states that "[t]he Commission shall furnish for each local board all public health services for the local district." See id. (emphasis added).
This court is satisfied that PRHC did not possess the statutory authority to enact Ordinance 2000-01 for fire safety purposes. Since State law preempts any municipal regulation of smoking except for fire safety reasons, and since the power to enact fire safety regulations rests with the municipal governing bodies and not the PRHC, Ordinance 2000-01 is invalid and unenforceable on fire safety grounds.

V.

CONCLUSION
Based on all of the reasons set forth herein, Ordinance 2000-01 is declared void and of no force and effect.
NOTES
[1] The court signed an order on June 19, 2000. The order, in pertinent part, established a briefing schedule and included a continuation of the injunctive relief pending the court's decision on July 20, 2000.
[2] On the return date of the order to show cause and motion to remove NSA as a party plaintiff, two additional issues were raised. The first was whether Ordinance 2000-01 was sustainable on fire safety grounds and the second was whether the PRHC had the authority to enact the Ordinance on fire safety grounds. Those issues are addressed in this opinion.
[3] Based on the standards set forth in Crowe v. De Gioia, 90 N.J. 126, 132-34, 447 A.2d 173 (1982), the court held that (1) plaintiffs demonstrated a reasonable probability of ultimate success on the merits; (2) plaintiffs demonstrated that, absent judicial intervention, plaintiffs would suffer substantial, immediate and irreparable harm; (3) plaintiffs demonstrated that the equities amongst the parties favored granting the relief requested; and (4) plaintiff demonstrated that the public interest favors granting the relief requestedan injunction will simply maintain the status quo within the community.
[4] See N.J.S.A. 26:3-92 (providing that "[e]ach regional health commission shall have jurisdiction in matters of public health within the geographic area of the participating municipalities. It shall succeed to all powers and perform all the duties conferred and imposed upon the municipal boards of health ....").
[5] See Certification of Robert J. Conroy, Esq., counsel for NJB, and Exhibit A.
[6] See PRHC's brief at 8.
[7] A restaurant is defined as a retail food establishment whose principal business is the sale, service and/or preparation of food for consumption on or off the premises, including but not limited to coffee shops, cafeterias, sandwich stands, private and public cafeterias and any other eating establishments, which give or offer food to the public, guests or employees. See Section 2(e). A cabaret is defined as a place where entertainment is performed, and whose principal purpose is to provide entertainment and/or dancing in conjunction with the service of food and/or beverages. See Section 2(b). A tavern is defined as a retail establishment or separately enclosed section thereof in which the principal business is the sale of alcoholic beverages for consumption on the premises of such establishment. See Section 2(k).
[8] Reply brief in support of plaintiffs' request for preliminary injunction and in opposition to defendant's motion to remove NSA as a plaintiff, pages 13 and 14.
[9] See Spano Cert. at Ex. C (emphasis added).
[10] Even assuming arguendo that the court finds that the State Legislature did not intend to prohibit regulation in these exempted areas, the Ordinance cannot be salvaged from infirmity by the severability clause included in the second to last provision of the Ordinance. Under New Jersey law, "[i]t is not enough in itself that the invalid portion or section of a statute is excisable in fact; additionally, in such case, a clear intention must appear on the part of the Legislature to authorize severability and consequent continued viability of the statute." New Jersey Chapter, Am. Inst. Planners v. New Jersey State Bd. of Prof'l Planners, 48 N.J. 581, 594, 227 A.2d 313 (1967), cert. denied, 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967) (citation omitted). A severability clause provides a rule of construction which may sometimes aid in determining legislative intent; but it is merely an aid, not an inexorable command. State, by McLean v. Lanza, 27 N.J. 516, 143 A.2d 571 (1958). Here, there is no provision of the Ordinance that can be excised; rather, the Ordinance requires a total re-write. Moreover, from the moment of the Ordinance's contemplated inception, the PRHC intended to impose a virtual blanket smoking ban throughout Princeton Township and Princeton Borough. It is eminently clear that the PRHC had no intention of enacting this smoking ban simply with respect to bars, places of employment with fewer than fifty employees, and food and marketing stores with less than 4,000 square feet and never evaluated that prospect. The PRHC cannot now in good faith argue that when it included the severability provision at the end of the Ordinance, it contemplated that virtually all of the Ordinance would be deemed invalid and, if so, the Ordinance should still apply in the few areas where it might remain valid.
[11] For the same reasons, the court rejects the assertion by PRHC that food and marketing stores as defined in N.J.S.A. 26:3D-33, with less than 4,000 square feet may be the subject of municipal regulation. N.J.S.A. 26:3D-32 et seq., entitled Food and Marketing Stores, provides in relevant part that "the purpose of this act, therefore, is to prohibit smoking in enclosed retail food and marketing stores." Enclosed retail food and marketing stores, as used in the act, include "[a]ny establishment where food is sold primarily for off-premises consumption and in which the selling area open to the public exceeds 4,000 square feet." N.J.S.A. 26:3D-33(a).
[12] See also N.J.S.A. 26:3D-40(b), which provides that without demonstrating the need to protect life and property from fire, the municipality may ban smoking in pharmacies, drug stores, or areas registered with the board of pharmacy of the State of New Jersey and to which permits have been issued for the dispensing of prescription drugs, and in any areas where hearing aids are sold at retail.
[13] As with the express exclusion of bars and employers with less than 50 employees, when exempting certain businesses like small food stores from regulation, the Legislature recognized that there was no reason to upset the economic equilibrium of small food stores by imposing the same burden of regulation as placed on large food stores. To view this purposeful exemption as a green light to municipal smoking bans distorts the balance carefully crafted by the Legislature and produces the anomaly that those establishments deemed by the Legislature to be most worthy of an exemption from regulation will experience the most intensive regulationa smoking ban. This type of statutory interpretation cannot be countenanced. See Stonehill Property Owners Ass'n, Inc. v. Township of Vernon, 312 N.J.Super. 68, 711 A.2d 346 (App.Div. 1998) (providing that when construing a statute, a court must read the statute sensibly and not arrive at a construction which distorts its true intent).
[14] N.J.S.A. 26:3D-1, entitled Legislative findings and declarations "prohibits smoking in passenger elevators in every building other than a single family dwelling".
[15] The plaintiffs' responsive brief in opposition to the brief of amicus curiae cites three cases from other jurisdictions striking down smoking ordinances on state preemption grounds, see Justiana v. Niagara County Dep't of Health, 45 F.Supp.2d 236 (W.D.N.Y.1999), Anchor Inn Seafood Rest. v. Montgomery County Council, Civil No. 1999692 (Montgomery County, Md. Cir. Ct., June 15, 2000) and Leonard v. Dutchess County Dep't of Health, No. 99 Civ 11886 WCC, 2000 WL 948800 (S.D.N.Y. July 11, 2000).
[16] PRHC commenced its discussion and consideration of a smoking ban in February of 1999. See PRHC Brief at 3. Version 1 (not introduced) justified the smoking ban solely as a public health measure and contained no reference whatsoever to fire safety. See Supplemental Certification of Ross A. Lewin ("Lewin Supp. Cert.") at Ex. A. Ordinance 2000-01 was formally introduced on February 15, 2000. Id. at Ex. B. The operative terms of the Ordinance as introduced closely resemble those ultimately enacted by the PRHC. Once again, however, the "whereas" clauses in the Ordinance simply describe the Ordinance as a public health measure with absolutely no reference to fire safety. The official minutes of the February 15, 2000 meeting reflect that the Chair commenced the meeting by stating that the PRHC "felt it was necessary to take a public stance on this issue as a public health protection measure" and the Vice-Chair "emphasized that the ordinance was intended to protect nonsmokers from the adverse health effects of environmental tobacco smoke." Id. at Ex. C (emphasis added). Moreover, one Commission member who was absent from the evening's proceedings submitted a letter in support of the Ordinance stating "recent evidence is irrefutable that passive smoke exposure is a major public health hazard ... it accomplishes the goal of increasing protection from the hazards of exposure to tobacco smoke." Id. at Ex. D. The Ordinance was then subject to further revision, dated April 18, 2000, prior to its enactment, with the principal issue focusing on whether private social clubs would be exempt from the Ordinance. Id. at Ex. E. Ultimately, Ordinance 2000-01 was enacted without an exemption for private social clubs because, according to the Chair of the PRHC, such an exemption "would diminish health protection especially for employees at the clubs who had long term exposure to second hand smoke." Id. at Ex. F (emphasis added). The PRHC added a single "whereas" clause on the fire safety issue: "WHEREAS, the State of New Jersey has acknowledged that smoking is the leading cause of death from fire[.]" See Cayci Cert. at Ex. A. Except for the insertion of this phrase, not a single revision was made to the Ordinance to address fire safety issues. See Lewin Supp. Cert. at Ex. E.
[17] The only evidence on fire safety that PRHC has produced is a "N.J. Fire Safety Report" identified in Paragraph 3 of the certification of William Hinshillwood. This "Report" is a single page entitled "What you Can Do to Prevent a Fire" from the web site of the New Jersey Department of Community Affairs' Division of Fire Safety. The "Report" urges the installation of smoke detectors in homes and specifies various measures to "[p]revent a fire from starting in your home." Ibid. (emphasis added). One of these tips advises that smoking is the leading cause of fire deaths and the second most common cause of residential fire. If you are a smoker, do not smoke in bed, never leave burning cigarettes unattended, do not empty smoldering ashes in the trash, and keep ashtrays away from upholstered furniture and curtains. Ibid. Ordinance 2000-01, however, exempts residential buildings from the smoking ban.